# In the United States Court of Federal Claims

No. 20-1074T

(Filed: April 16, 2021)

| | | |
|---|---|---|
| ************************************* | | |
| DOUBLE LION UCHET EXPRESS | * | |
| TRUST et al., | * | |
| | * | |
| Plaintiffs, | * | Pro Se Plaintiffs; Motion to Dismiss; |
| | * | Subject Matter Jurisdiction; RCFC |
| v. | * | 12(b)(1); Sovereign Citizen Allegations; |
| | * | Frivolous Claim; In Forma Pauperis |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| ************************************* | | |

Ra Nu Ra Khuti Amen Bey and Delma Andrews-Powley, Tampa, FL, pro se.

Steven M. Chasin, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Senior Judge

Plaintiffs Double Lion Uchet Express Trust ("Double Lion"),[1] Ra Nu Ra Khuti Amen Bey,[2] and Delma Andrews-Powley, proceeding pro se in this matter, allege that "the United States Incorporated" owes them hundreds of millions of dollars. Plaintiffs also seek to proceed in forma pauperis. Currently before the court is defendant's motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). As explained below, the court grants defendant's motion, denies plaintiffs' application to proceed in forma pauperis, and enjoins the filing of any additional complaints by plaintiffs in this court absent prior authorization of the chief judge.

### I. BACKGROUND

Plaintiffs filed a largely incomprehensible form complaint accompanied by a large appendix of documents. In the civil cover sheet attached to the complaint, which uses the

---

[1] The legal status, if any, of Double Lion is unclear. The documents attached to the complaint imply a connection between Double Lion and Mr. Bey, who is described as the "Settlor" of Double Lion. Compl. App. 11.

[2] Mr. Bey is also known as Bertram Andrews-Powley, III.

nature-of-suit code for an estate tax claim, they request $15 million for Ms. Andrews-Powley, $419 million for Double Lion, and $419 million for Mr. Bey.  Compl. Cover Sheet 1-3.[3]  The court has discerned two legal theories that may be implicated in the complaint and its appendix.  Before turning to these theories, however, the court observes that this suit has all the hallmarks of a "sovereign citizen" suit that has no basis in law, but instead relies on fictional legal instruments and frivolous theories to advance the baseless claim that plaintiffs are creditors of the United States.

### A. Moorish Sovereign Citizen Complaints

The sovereign citizen concepts espoused in the complaint are not unfamiliar.  The federal court system in general, and the United States Court of Federal Claims ("Court of Federal Claims") in particular, have become well acquainted with the sovereign citizen movement over the past few decades.  Typically, sovereign citizens maintain that "they are not subject to federal government authority and employ various tactics in an attempt to, among other acts, avoid paying taxes [and] extinguish debts."  Walby v. United States, 144 Fed. Cl. 1, 3 (2019), aff'd, 957 F.3d 1295 (Fed. Cir. 2020).

Among the adherents to sovereign citizen concepts and strategies, some claim to be "sovereign citizens by virtue of their alleged Moorish origin."  Bey v. State, 847 F.3d 559, 560 (7th Cir. 2017).  These Moorish sovereign citizens

> build[] on their alleged ancestry in ancient Moors (and/or on their alleged or actual adhesion to Moorish religious convictions) for the purposes of . . . initiating frivolous legal actions on the grounds of their self-granted "diplomatic immunity," which these individuals deduce either from their self-granted "Moorish citizenship" and from their correspondingly-produced homemade "Moorish" documents . . . or from a multitude of other, equally non-cognizable under the law, bases, which these individuals keep creating in order to support their allegations of "diplomatic immunity."

Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp. 2d 241, 245 (D.N.J. 2011).  In short, these individuals "attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws."  El-Bey v. United States, No. 1:08CV151, 2009 WL 1019999, at *1 (M.D.N.C. Jan. 26, 2009).

The vocabulary used by plaintiffs in the complaint at bar is typical of a Moorish sovereign citizen suit:  (1) "The Moorish National Republic," Compl. App. 1; (2) "Aboriginal and Indigenous Natural Peoples of North-West Amexem North America," id.; (3) "Moorish Science Temple of America," id. at 11; (4) "Aboriginal/Indigenous, free Sovereign Moor— Natural Person of the Land," id. at 85; and (5) "Washitaw de Dugdahmoundyah Territory," id. at

---

[3] The page references to plaintiffs' filings are those assigned by the court's electronic filing system.

105.  See Murakush Caliphate of Amexem Inc., 790 F. Supp. 2d at 242-73 (providing a history of the litigation tactics and examples of the specialized vocabulary of Moorish sovereign citizen plaintiffs who assert that they are endowed with special citizenship rights).  Also typical of Moorish sovereign citizen litigants is the practice of creating documents purporting to establish various legal rights.  See, e.g., El-Bey, 2009 WL 1019999, at *1 (noting that the Moorish sovereign citizen plaintiff in that case had filed "several bogus documents").  The appendix here includes an abundance of meaningless documents created by plaintiffs with legal terminology in the titles:  "Notice of Public Records Correction International Document," Compl. App. 78; "Court Bond / Security," id. at 106; "Note" (promissory note tendered in lieu of $400 federal district court filing fee), id. at 116; "Statement of Account," id. at 252; "Trust Indenture," id. at 272; "Notice of Dishonor," id. at 288; "Notice of Waiver of Tort," id. at 294; "Notice - Letter Rogatory," id. at 319; "Quit-Claim-Al-Sesin-In-Deed," id. at 663; and "Certificate of Acknowledgement," id. at 667.

      The appendix also includes hundreds of pages of court orders, court judgments, and court docket reports that have been annotated with hand-written gibberish—each of these documents is described by plaintiffs in their appendix index as a "private banker's acceptance" or "private banker's contract"; the compendium of these annotated documents appears to be an attempt by plaintiffs to justify their monetary claim by identifying a series of adverse events they have encountered in the federal court system and the Florida state court system.  Id. at 2-6, 473-618, 627-42, 673-749, 752-96.  As in many Moorish sovereign citizen suits, the mass of paper filed by plaintiffs is vexatious and wastes the resources of defendant and the court.  See, e.g., El-Bey v. City of Greensboro, No. 1:10CV572, 2011 WL 4499168, at *3 (M.D.N.C. Sept. 27, 2011) (decrying the "drain on scarce judicial resources imposed by [that Moorish sovereign citizen plaintiff's] voluminous and repetitive filings" and noting the need to protect potential defendants "from having to respond to baseless and harassing litigation in the future"), report and recommendation adopted as modified, No. 1:10CV572, 2012 WL 13064405 (M.D.N.C. Mar. 21, 2012), aff'd, 539 F. App'x 312 (4th Cir. 2013) (mem.).

      Because plaintiffs here have crafted a complaint that fully embraces Moorish sovereign citizen concepts and vocabulary, and have expounded on such concepts ad nauseam, the court restricts its analysis to what can be understood of their requests for relief.

### B. Two Legal Bases That Might Be Discerned in the Complaint

      Having examined plaintiffs' complaint and accompanying appendix thoroughly, the court concludes that plaintiffs' claim might be predicated on tax law or contract law.  Nevertheless, as noted above, plaintiffs' claim is most accurately described as a frivolous Moorish sovereign citizen claim with no legal basis whatsoever.

### 1. Tax Claim

      As might be relevant to an estate tax refund claim, plaintiffs reference 28 U.S.C. § 1346(a)(1), the statutory provision that provides federal district courts with concurrent jurisdiction with this court to entertain tax refund claims.  Compl. 1.  Plaintiffs also include

within their appendix a large number of documents that appear, in large part, to be federal tax forms or correspondence between plaintiffs and the Internal Revenue Service ("IRS"). Compl. App. 99-100, 120-33, 180-251, 327-401. Finally, plaintiffs employ a vocabulary that has at least a hypothetical relationship to an estate tax claim: "refund," Compl. 1; "tax issue," id. at 2; "Bertrand Andrews-Powley III Estate," Compl. App. 254; and "tax liability," id. at 319. Thus, plaintiffs have included within their incoherent complaint a number of terms that might appear in a tax refund complaint filed in this court.

However, it should be noted that plaintiffs' use of tax terminology is largely incomprehensible. To the extent that any sense can be made of their use of tax legalese, plaintiffs appear to be asserting a right to tax the "United States Incorporated" entity for millions of dollars. Compl. 2; Compl. Cover Sheet 1-3. Indeed, plaintiffs state that they are "true creditors" of the United States and are "exempt from taxation from the public side." Compl. App. 61. In any case, the court now turns to the other potential basis for plaintiffs' claim—breach of contract.

### 2. Contract Claim

Plaintiffs make liberal use of the term "contract" in their complaint and accompanying appendix. Although the precise nature of the contracts invoked by plaintiffs remains obscure, they characterize the contracts as both "private banking contracts and certificates of deposit held in Treasury Direct." Compl. 1. The term "private banker's acceptance" is used in their appendix in connection with numerous federal and state court orders for which plaintiffs apparently seek redress in the form of monetary relief. Compl. App. 2-6, 473-618, 627-42, 673-749, 752-96.

More generally, plaintiffs allude to a breach of contract by the United States with such expressions as "default of valid bi-laterally executed contracts"—contracts which are also described as United States debt obligations—and state that they seek "damages from the defendant for its breach of Government Contracts." Id. at 54, 62. The mass of homemade, meaningless documents in plaintiffs' appendix includes a "Court Bond / Security" in the amount of $758,402,967, which is just one example of the type of purported financial instrument upon which plaintiffs appear to rely. Id. at 106-15. Construing the complaint very liberally, plaintiffs could be asserting a breach of contract by the United States, although the factual foundation of any such claim is a frivolous compendium of documents with no legal significance, accompanied by fanciful theories of Moorish sovereign citizen entitlement to monetary damages.

### C. Procedural Posture

Plaintiffs acknowledge in their complaint that this suit is directly related to two prior suits filed in this court, both of which were dismissed. Compl. 2; see also Double Lion Uchet Express Tr. v. United States, 149 Fed. Cl. 415, 423 (2020) (dismissing complaint because the court lacked jurisdiction over plaintiffs' claims, and noting that their Moorish sovereign citizen claims were frivolous); Amen Bey v. United States, No. 17-617C, slip op. (Fed. Cl. Oct. 30, 2017) (dismissing Mr. Bey's claim for failure to prosecute). Within the voluminous appendix to the complaint filed in this suit on August 13, 2020, plaintiffs incorporate three requests for judgment

in their favor.  Compl. App. 23-29 ("Notice of Request for Entering Judgment"), 30-34 ("Motion for Summary Judgment"), 35-42 ("Notice of Default Judgment").  Subsequently, plaintiffs filed renewed requests for judgment in their favor on September 21, 2020, October 13, 2020, and January 25, 2021.  The filing of the third motion of this type contravened the court's order of October 15, 2020, which prohibited plaintiffs from filing additional requests for judgment in their favor.

On October 30, 2020, plaintiffs filed an appeal of three of the court's procedural rulings in this case.  During the pendency of that appeal, defendant filed its motion to dismiss.  In its motion, defendant states that the complaint is "nearly devoid of facts and largely unintelligible on its face." Def.'s Mot. 1.  It also contends that the sovereign citizen framework of any discernible claim renders the complaint frivolous and without merit.

Subsequently, on January 21, 2021, the United States Court of Appeals for the Federal Circuit granted the government's motion to dismiss plaintiffs' appeal as premature, and issued the mandate for the dismissal of the appeal on the same day.  Plaintiffs then filed their response to the government's motion to dismiss, and the government filed a reply.[4]  This matter is now ripe for a ruling.

## II.  STANDARDS OF REVIEW

### A.  Pro Se Plaintiffs

Pro se pleadings, like those submitted by plaintiffs, are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").  In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of evidence, that the court possesses jurisdiction.  See Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### B.  Motion to Dismiss Under RCFC 12(b)(1)

When considering whether to dismiss a complaint for lack of jurisdiction pursuant to RCFC 12(b)(1), the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Whether the court has subject matter jurisdiction to decide the

---

[4] The court stayed, pending the resolution of defendant's motion to dismiss, a number of miscellaneous requests incorporated in plaintiffs' opposition brief, including their request that the government provide a more robust response to their complaint.  Order Mar. 2, 2021.

merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

To determine whether it has jurisdiction, the court discerns the true nature of the claims in the complaint and is not constrained by the plaintiff's characterization of those claims. Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994). If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### III. DISCUSSION

Plaintiffs' complaint is a jumble of legalese that is, at bottom, nonsensical. The accompanying documents in the appendix are similarly unhelpful. To the extent that any claim is discernible, it is best characterized as a tax-refund claim or a breach-of-contract claim. However, under either characterization, their claim must be dismissed on jurisdictional grounds.

#### A. No Nonfrivolous Tax-Refund Claim

The court begins by analyzing whether plaintiffs allege a nonfrivolous tax-refund claim. Although plaintiffs include in the appendix to their complaint a large number of documents related to their dealings with the IRS, none of these documents is identified as the basis for a tax refund claim. Instead, the opening passage in the complaint exemplifies plaintiffs' idiosyncratic, and meaningless, use of tax terminology to characterize their claim: "This is a taxable termination event / case: Co-plaintiffs have done an assessment with the Internal Revenue Service and are due an offset / refund on the debt obligation(s) (private banking contracts and certificates of deposit held in Treasury Direct)." Compl. 1. Tellingly, plaintiffs do not identify a tax year for which a refund is sought, nor do they assert that they have paid taxes to the United States in the amount that they request in this suit. Thus, they have not satisfied the requirements

for pleading a tax-refund claim within the jurisdiction of this court as set forth in 26 U.S.C. § 7422(a) and RCFC 9(m).

Even if plaintiffs' claim could be described as a tax-refund claim, it is entirely frivolous and does not fall within this court's jurisdiction. See Boeing Co. v. United States, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (stating that "[a]llegations of subject matter jurisdiction, to suffice, must satisfy a relatively low standard," but also noting that "essentially fictitious" and "obviously frivolous" claims do not meet the standard (citing Shapiro v. McManus, 577 U.S. 39, 45-46 (2015))). Plaintiffs' stance on taxes, to the extent that any coherent argument on this topic can be discerned in their filings, is that they do not need to pay taxes to the United States, but can assess taxes against the United States. See, e.g., Compl. 2 ("The co-plaintiffs have assessed the taxes in this matter."); Compl. App. 61 (stating that plaintiffs are "exempt from taxation from the public side"). In other words, any tax claim in the complaint is more of the nature of a tax protest and, as such, is frivolous. See, e.g., Brown v. United States, 35 Fed. Cl. 258, 269 (1996) (concluding that the tax protestor suit before the court was frivolous), aff'd, 105 F.3d 621 (Fed. Cir. 1997).

Further, the absence of any allegation that plaintiffs paid the United States hundreds of millions of dollars in taxes removes their claim for such sums from the ambit of this court's jurisdiction over tax refund suits. See, e.g., Diversified Grp. Inc. v. United States, 841 F.3d 975, 981 (Fed. Cir. 2016) (noting that 26 U.S.C. § 1346(a)'s "jurisdictional grant includes a 'full payment requirement,' which demands—as a jurisdictional prerequisite—full payment of the tax or penalty before a party could sue for a refund" (citing Flora v. United States, 362 U.S. 145, 177 (1960))). The full-payment rule bars frivolous tax claims just as well as tax claims that are founded on actual tax liabilities. See, e.g., Bettis v. United States, No. 17-766T, 2017 WL 6336778, at *6 (Fed. Cl. Dec. 12, 2017) (dismissing, for failure to satisfy the full-payment rule, a frivolous tax-refund claim founded on a fictitious bond valued by the plaintiff at $850 billion).

For each of these reasons, any tax-refund claim that could be discerned in plaintiffs' complaint must be dismissed for lack of jurisdiction.

### B. No Nonfrivolous Breach-of-Contract Claim

Plaintiffs fare no better under a breach-of-contract analysis. As with their unavailing (or empty, futile) tax-related allegations, plaintiffs string together contract-related legal terms in a nonsensical fashion. In the jurisdictional statement of their complaint, plaintiffs write:

> This is a taxable termination event / case: Co-plaintiffs have done an assessment with the Internal Revenue Service and are due an offset / refund on the debt obligation(s) (private banking contracts and certificates of deposit held in Treasury Direct). The government obligations (stipulated contracts / stipulated bills of exchange) were ratified in compliance with 31 USC 9303(a)(3) and do not impede this courts Exclusive Jurisdiction as outlined in 28 USC 1346(a)(1)(c). . . . Co-plaintiff[]s request 1099 OID A and C and full settlement and closure of this accounting.

Compl. 1.  That text is supplemented by plaintiffs' statement of their claim:

> The co-plaintiffs are here by special appearance on a tax issue.  There are no material facts to move forward as stipulation has been reached on private banking contracts between the co-plaintiffs and the agent(s) representing the UNITED STATES INCORPORATED.  The co-plaintiffs have assessed the taxes in this matter.  Additionally, the co-plaintiffs have posted bond(s) of which the UNITED STATES INCORPORATED are in possession.  These bonds have ended any and all controversy in this matter by discharging the alleged obligations irregardless of the aforementioned IRS assessment.  The co-plaintiffs are here for settlement and closure.

Id. at 2.  Finally, plaintiffs close their complaint with this request for relief:  "Executor should file a 1099 OID and identify who the payor is and who the recipient of the funds is and validate the Certificates of Deposit being held in treasury direct as property of the co-plaintiffs trust for full settlement and closure of this accounting."  Id. at 3.  When the complaint and all of the documents appended to the complaint are considered, plaintiffs' contract claim remains incoherent, nonsensical, and, at bottom, frivolous.

To avoid dismissal on jurisdictional grounds, a plaintiff asserting a breach-of-contract claim is only "required to set forth a non-frivolous allegation of breach of a contract with the government."  Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1341 (Fed. Cir. 2021) (citing Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011)).  That low standard has not been met here.  Plaintiffs rely on fictitious contracts unmoored in law and untethered to reality.

Plaintiffs repeatedly reference an IRS tax form, Form 1099-OID.  Compl. 1, 3.  Such a form is used to report an "original issue discount," typically the difference between a bond's redemption price at maturity and its issue price.  26 U.S.C. § 1273(a)(1).  Plaintiffs assert that they have "posted bond(s)," Compl. 2, and have included at least one homemade bond in the appendix, Compl. App. 106-15 ("Court Bond / Security").  There is, however, no nonfrivolous allegation in the complaint that the United States is in default on any bond purchased by plaintiffs.

Plaintiffs also allege, it appears, that "stipulated contracts / stipulated bills of exchange" and "private banking contracts and certificates of deposit held in Treasury Direct" underlie their contract claim against the United States.  Compl. 1.  There is not, however, a single nonfrivolous factual allegation in the complaint and its attachments that implicates a specific express or implied contract with the United States.  Plaintiffs proffer, instead, an incoherent sovereign citizen broadside which presumes that their rights as Moorish sovereign citizens, along with adverse rulings from various courts, entitle them to a breach-of-contract remedy against the United States.  Sovereign citizen theories such as these are frivolous and insufficient to establish jurisdiction for a breach-of-contract claim in this court.  See, e.g., Ammon v. United States, 142 Fed. Cl. 210, 219-20 (2019) (noting that a breach-of-contract claim founded on sovereign citizen arguments was frivolous), appeal dismissed, No. 19-1759 (Fed. Cir. June 21, 2019); Gravatt v.

United States, 100 Fed. Cl. 279, 285, 288 (2011) (finding a sovereign citizen claim founded on fictitious homemade documents and nonexistent trust fund accounts with the United States Department of the Treasury to be frivolous).

Plaintiffs expanded upon their contract-related allegations in two other filings—a motion for default judgment and their opposition to defendant's motion to dismiss.  Although these filings do not amend the complaint, they do illustrate plaintiffs' perspective on the purported contract or contracts with the United States upon which their contract claim relies.

In their motion for default judgment, plaintiffs assert that they are collecting on a debt owed to them by the "UNITED STATES INCORPORATED/CABAL/CABAL MEMBERS" because of a "contractual default":

> [T]he coplaintiffs request a lawful and legal Return on these "Government" Debt Obligations including cost and reasonable interest on claim 1 and 2 where prior to any legal cost is valued at:  590,723,389.78 Government Obligation (444,943,802.00) four-hundred forty four million nine-hundred forty three thousand eight-hundred two fiat federal reserve note / USD . . . .  [C]o-plaintiff(s) reserve the right to collect in alternative species such as gold and silver.

Pls.' Mot. for Default J. 2-3.  Plaintiffs also offer another description of a debt instrument that underlies their suit:

> [I]t is requested that our Registered - Bond / Court-Bond be Surrendered to us pursuant to CFR 306.75(a)(b).  This bond is 3 times the value of the Certificates of Indebtedness being held in the Treasury Direct Account since July 29, 2019 . . . .  [T]he value of this bond is 758,402,967.00 (seven hundred fifty eight million four hundred two thousand nine hundred sixty seven federal reserve notes / fiat / USD[)].

Id. at 9.  The aforementioned "Court-Bond," printed on paper bearing the banner of "The Moorish National Republic," is included in the appendix, and is in the amount of $758,402,967.  Compl. App. 106, 108.  It is signed only by Mr. Bey and a notary.  Id. at 114.  To the extent that plaintiffs attempt to base their contract claim on this bond or others of their own devise, their contract claim is frivolous.

Turning to plaintiffs' opposition to defendant's motion to dismiss, the "Court-Bond" is again mentioned as a basis for the monetary relief they request, in the amount of $758,402,967.  Pls.' Opp'n 6.  Alternatively, Ms. Andrews-Powley seeks $15 million for "damages for U.S. Government Debt Obligations owed to" plaintiffs, and Mr. Bey seeks $580 million for "damages to [his] estate for U.S. Government Debt Obligations owed to" plaintiffs.  Id. at 5-6.  Again, there is no nonfrivolous factual allegation in the complaint or its appendix that suggests the existence of a contract between plaintiffs and the United States as might be evidenced through actual debt instruments or obligations.

Having considered the complaint, the appendix, plaintiffs' last motion for default judgment, and plaintiffs' opposition to defendant's motion to dismiss, any breach-of-contract claim asserted by plaintiffs is frivolous and insufficient to establish jurisdiction in this court for their suit.

### IV.  APPLICATION TO PROCEED IN FORMA PAUPERIS

As previously noted, plaintiffs filed an application to proceed in forma pauperis. Pursuant to 28 U.S.C. § 1915, the Court of Federal Claims may waive filing fees and security under certain circumstances.  See 28 U.S.C. § 1915(a)(1); see also Hayes v. United States, 71 Fed. Cl. 366, 366-67 (2006) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike).  Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that lists all of their assets, declares that they are unable to pay the fees or give the security, and states the nature of the action and their belief that they are entitled to redress.  28 U.S.C. § 1915(a)(1).  Plaintiffs have not satisfied these requirements.  Indeed, their application to proceed in forma pauperis is just as frivolous as their complaint.

As an initial matter, they claim that they have no income and provide this nonsensical explanation for how they pay their expenses:  "The Emergency Banking Act took our gold but gave us an exclusion which is unlimited.  Co[-]plaintiffs are secured party creditors and operate as such."  Appl. 2.  They also claim not to have any money in cash or a bank account because "there is no money according to House Joint Resolution 192 and Public Law 73.10."  Id.  These laws, taken together, did not eliminate money, but instead invalidated obligations requiring payment in gold as against public policy and provided that United States currency is legal tender for all debts.  See generally Agricultural Adjustment Act, tit. III, Pub. L. No. 73-10, 48 Stat. 31, 51-54 (1933) ("Financing—and Exercising Power Conferred by Section 8 of Article I of the Constitution:  To Coin Money and to Regulate the Value Thereof"); H.R.J. Res. 192, 48 Stat. 11 (1933) ("To assure uniform value to the coins and currencies of the United States.").

Because plaintiffs' allegations of poverty are fantastical, the court must deny their application to proceed in forma pauperis.

### V.  CONCLUSION

In short, amid the voluminous pages of legalese and homemade documentary falsities submitted to the court, plaintiffs have not alleged a nonfrivolous claim.  The court therefore lacks jurisdiction to entertain plaintiffs' complaint.

Accordingly, the court **GRANTS** defendant's motion to dismiss.  Plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.  The court also **DENIES** plaintiffs' application to proceed in forma pauperis.  In consequence, the court's filing fee for this suit remains due and owing.  Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith because, as alleged, plaintiffs' claim is clearly beyond the subject matter jurisdiction of this court.

In addition, due to plaintiffs' pattern of frivolous and vexatious filings in this matter and their previous cases filed in this court, Double Lion Uchet Express Trust, Ra Nu Ra Khuti Amen Bey (also known as Bertram Andrews-Powley, III), and Delma Andrews-Powley are immediately **ENJOINED** from filing any new complaints with this court without an order from the chief judge of the court granting leave to file a complaint. If these plaintiffs, or any subset thereof, seek to file a new complaint, they shall first submit a "Motion for Leave to File" that explains how the new complaint involves new matters not previously raised in this court. Any such motion must include as an attachment a full complaint that meets all the requirements of RCFC 8. In the event that the chief judge grants their motion, plaintiffs will be required to pay all outstanding filing fees owed for Case Nos. 20-577C and 20-1074T, as well as the filing fee for the new suit, before they can proceed in this court.

No costs are awarded. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Senior Judge